Ron C. Finley, Esq. (Cal. Bar. No. 200549)
Alfredo A. Bismonte, Esq. (Cal. Bar. No. 136154)
Craig Alan Hansen, Esq. (Cal. Bar. No. 209622)
Beck, Ross, Bismonte & Finley, LLP
50 West San Fernando Street, Suite 1300
San Jose, CA 95113
Tel: (408) 938-7900
Fax: (408) 938-0790
Email: rfinley@beckross.com
       abismonte@beckross.com
       chansen@beckross.com

Mark E. Zeller, Esq. (Cal. Bar. No. 219427)
Law Offices of Mark Edward Zeller
2255 Contra Costa Blvd., Suite 304
Pleasant Hill, CA 94523
Tel: (925) 363-5848
Fax: (925) 363-7454
Email: mzeller@mezlaw.com

Attorneys for Plaintiffs Richard A. Noble and Charlene R. Noble

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD A. NOBLE, and CHARLENE R. NOBLE,<br><br>Plaintiffs,<br><br>vs.<br><br>KIEWIT PACIFIC CO., a Delaware corporation; LIFE INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania corporation; PETER KIEWIT SONS', INC. HEALTH AND WELFARE PLAN; PETER KIEWIT SONS', INC., a Delaware corporation; JOHN JANSEN, an individual; MICHAEL PHELPS, an individual; and JANE SEWELL, an individual<br><br>Defendants. | CASE NO. C08 00666 BZ<br><br>**COMPLAINT FOR:**<br>(1) ENFORCEMENT AND CLARIFICATION OF RIGHTS UNDER ERISA PLAN;<br>(2) BREACH OF FIDUCIARY DUTY UNDER ERISA;<br>(3) DISCRIMINATION ON THE BASIS OF DISABILITY/MEDICAL CONDITION: FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS;<br>(4) DISCRIMINATION ON THE BASIS OF DISABILITY/MEDICAL CONDITION: FAILURE TO ACCOMMODATE;<br>(5) DISCRIMINATION ON THE BASIS OF MEDICAL CONDITION: WRONGFUL DISCHARGE FROM EMPLOYMENT ON THE BASIS OF MEDICAL CONDITION;<br>(6) TORTIOUS TERMINATION IN VIOLATION OF PUBLIC POLICY;<br>(7) BREACH OF CONTRACT;<br>(8) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING<br><br>**DEMAND FOR JURY TRIAL** |

Complaint, Case No.                                1

Plaintiffs Richard A. Noble and Charlene R. Noble allege:

1. Plaintiff Richard A. Noble ("Plaintiff") is a 55-year-old adult male, (DOB April 21, 1952) and, at all relevant times, has resided in Contra Costa County, California. Plaintiff was employed by defendants in Contra Costa County, California, and the defendants' conduct hereinafter alleged occurred in said County and State. Plaintiff is informed by several medical professionals that he is dying of cancer and may have less than one month to live.

2. Plaintiff Charlene R. Noble is Plaintiff's wife and also resides in Contra Costa County, California. She is also a beneficiary of her husband, including but not limited to any insurance benefits related to his employment by Kiewit.

3. On information and belief, Kiewit Pacific Co. ("Kiewit") is a Delaware corporation that regularly does business in the County of Contra Costa, California. Kiewit maintains a business office at 5000 Marsh Dr., Concord, CA 94520. Kiewit is registered with the California Secretary of State as a Corporation No. C1125955. Kiewit is an employer as defined in the California Fair Employment and Housing Act (FEHA) and the employer of Plaintiff.

4. On information and belief, defendant Life Insurance Company of North America ("Life Insurance Company") is a Pennsylvania corporation that regularly does business in the State of California, including the marketing, sale, and issuance of health insurance and health care service plans. On further information and belief, Life Insurance Company is a wholly owned subsidiary of CIGNA Corporation.

5. On information and belief, defendant Peter Kiewit Sons', Inc. Health and Welfare Plan (the "Plan") is a health and welfare benefits plan issued by Life Insurance Company and with an Employer Identification Number of 91-1842817.

6. On information and belief, defendant Peter Kiewit Sons', Inc. ("Plan Administrator") established, maintained, and administers the Plan.

7. On information and belief, defendant John Jansen ("Jansen") is a manager and employee of Kiewit. On further information and belief, at all times relevant to the matters alleged in this complaint, Jansen acted as Plaintiff's direct supervisor at Kiewit.

8. On information and belief, defendant Michael Phelps ("Phelps") is a manager and

employee of Kiewit. On further information and belief, at all times relevant to the matters alleged in this complaint, Phelps was the Kiewit Divisional Vice President and Jansen's direct supervisor.

9. On information and belief, at all relevant times defendant Jane Sewell ("Sewell") was a manager and employee of Peter Kiewit Sons', Inc. as its Equal Opportunity Officer ("EEO") and performed administrative duties relating to the Plan.

### Jurisdiction

10. This Court has subject matter jurisdiction under 29 U.S.C. § 1132(e)(1) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. §§ 1001-1461)("ERISA"). This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for all non-ERISA causes of action as they arise out of the same case or controversy.

11. This Court has personal jurisdiction over each of the defendants because they either reside or have done substantial business in this judicial district and have committed the alleged wrongful acts in this judicial district.

### Venue

12. Venue is proper in the Northern District of California pursuant to 28 U.S.C. §§ 1391 and 1400, as a substantial part of the acts or omissions giving rise to this action occurred in the Northern District of California.

### Intradistrict Assignment

13. Assignment to the Oakland district is proper pursuant to the District's assignment plan and Civil L.R. 3-2(c) because several of the parties reside in Contra Costa County.

### General Allegations

14. On January 16, 2006, Plaintiff was hired by Kiewit as the District Human Resources Manager for the Northern California District.

15. Plaintiff excelled in his work performance at Kiewit and was awarded a substantial bonus based on his 2006 performance. Plaintiff also earned a merit salary increase after 6 months of employment and a second merit increase in April of 2007.

16. In early 2001, when Plaintiff was 49 years old, Plaintiff was diagnosed with cancer. Since that time, Plaintiff has undergone various treatments and surgeries that seemed to keep the

cancer under control. Indeed from September 2001 through January of 2006, Plaintiff had not suffered from any noticeable cancer symptoms and appeared to have fully recovered.

17. From January 2006 through August 2006, following his commencement of work at Kiewit, Plaintiff performed well and suffered no major health problems which prevented him from meeting or exceeding his work goals until August of 2006.

18. In August of 2006, Plaintiff developed severe stomach problems and a fever. While Plaintiff's doctor originally suspected that those problems were caused by a parasite, Plaintiff soon came to realize that his cancer had reemerged and was swiftly spreading throughout his body.

19. During the fall of 2006, between September and December, Plaintiff informed Jansen and his colleagues that his cancer had come back and that would need to be treated.

20. In December of 2006, Plaintiff provided Jansen with a letter from his oncologist explaining that Plaintiff was undergoing treatments and that he would need reasonable accommodations at work. But Jansen did not respond to that letter and Kiewit failed to extend the requested accommodations. Kiewit also failed to enter into any interactive process to determine what accommodations would be appropriate for Plaintiff so that he could continue working at the company and attend to his cancer treatments.

21. In or about mid to late January of 2007, Plaintiff spoke with Jansen, and proposed that Kiewit hire a junior-level human resources professional that Plaintiff could coach, and who could assist with Plaintiff's job responsibilities while his cancer treatments were ongoing. Plaintiff explained that while his cancer treatments were debilitating, he could continue to perform many of his essential job functions from home, including developing a new employee handbook and assisting with screening, interviewing, and assisting with accessing job interview candidates. That conversation ended with a handshake and Plaintiff understood that Jansen would seriously consider his proposal.

22. At Jensen's suggestion that he talk to Phelps, on that same day in mid-late January 2007, Plaintiff also spoke with Phelps who told Plaintiff not to worry about his job and that he wished Plaintiff a swift recovery.

23. Kiewit ultimately ignored Plaintiff's requests for accommodations and did not propose

1 any solution to help Plaintiff manage his illness as well as his work responsibilities. Regardless, Plaintiff did in fact continue to work from both hospital bed and home, contacting and responding to communication from his subordinates, receiving and forwarding on emails with instructions pertinent to them and delegating responsibilities to his staff assistant, Lindsay Hicks.

24. Plaintiff continued to review and approve projects and tasks and to give advice to subordinates concerning what to do with various situations, occasionally meeting with the recruiter to support her in various areas of responsibility now delegated to her. Plaintiff also continued to use his company provided Blackberry to communicate electronically with his staff regarding company business, and to make business decisions and give advice to his subordinates.

25. During, between and after Plaintiff's chemotherapy treatments concluded in May of 2007, Plaintiff was prepared to return to work part time. But in or about April 2007, Plaintiff learned that Kiewit had hired a new Human Resources Manager, named Greenbaum, rather than hiring a junior-level professional to assist Plaintiff.

26. Plaintiff thereafter sent an email to Jansen expressing his dismay, concern and confusion about Kiewit's decision to hire a new Human Resources Manager and stating that he thought they had a different understanding. Plaintiff explained to Jansen that he hoped to return to work full time and asked what his new responsibilities, duties and reporting relationships would be in light of Kiewit's hiring of Greenbaum, given Jansen's oral commitment to retain Plaintiff with the same title with no loss of pay.

27. Jansen replied with a letter expressing his happiness over Plaintiff's anticipated return to work and requesting an estimated date of return from Plaintiff and his health care provider.

28. On April 19, 2007, Plaintiff responded to Jansen's letter with a handwritten letter and a note from his oncologist, Dr. Solganic, stating that Plaintiff was "undergoing comprehensive chemotherapy" and would need some periods of recuperation before he could return to work in a full-time position. Plaintiff's letter estimated that he would return to work in "later summer/early fall."

29. Jansen replied with a letter dated May 1, 2007 stating that, based on his estimated return date of "late summer or early fall," Kiewit was changing his status in the meantime to "administrative separation from employment." Jansen did not explain what that meant and did not

1 explain the implications of that new designation, other than to state that such designation "will allow
2 Kiewit to continue your benefits via COBRA." According to Jansen's letter, Plaintiff's timely
3 designation to COBRA would ensure that his "medical, dental <u>and supplemental life benefits will</u>
4 <u>continue</u>." Jansen also provided Plaintiff with a form entitled "Peter Kiewit's Sons', Inc. Welfare
5 Benefits Plan Medical/Dental COBRA Continuation Coverage Election form" (the "COBRA
6 Continuation Form") along with a $9,499.27 check to cover the monthly COBRA payments through
7 November 30, 2007. At that time, Plaintiff was covered under a $200,000 life insurance plan,.
8 Additionally, Plaintiff was covered under insurance policies for disability. These were important
9 benefits since he was suffering from cancer.

10   30.   Plaintiff promptly completed the COBRA Continuation Form, as instructed, and returned it to Kiewit. On information and belief, Kiewit received the completed COBRA Continuation Form on or about May 22, 2007. Plaintiff also made the requisite payments for the COBRA continuation.

14   31.   After receiving Jansen's May 1, 2007 letter, Plaintiff also telephoned Jansen to discuss his letter. Jansen did not respond.

16   32.   In June of 2007, Plaintiff's company-provided Blackberry ceased to function. When Plaintiff called Kiewit's IT specialist to find out what happened, he was told that that he was no longer a Kiewit employee.

19   33.   Upon hearing that news, Plaintiff phoned Sewell, the EEO for Kiewit's home office in Omaha, Nebraska, and left a message asking what was going on.

21   33.   Sewell called Plaintiff back in July and told him that she would look into the matter.

22   34.   Finally, Sewell called Plaintiff on August 4, 2007 explaining that, after investigating the matter, she determined that Plaintiff had been terminated effective May 1, 2007. Further, Sewell informed Plaintiff that he was not entitled to continuation of his life insurance benefits because he had not filled out the appropriate forms.

26   35.   Plaintiff explained to Sewell during that conversation that he completed and returned all forms provided to him and did everything that Jansen had instructed him to do. Plaintiff further expressed his confusion over his "termination" as Jansen and Phelps had both told him not to worry

Complaint, Case No.                               6

1  about his job and Jansen's May 1, 2007 letter said nothing about him being "terminated." Plaintiff
2  told Sewell that Kiewit had wrongfully terminated his employment as a result of his medical
3  condition.

4  36. When Plaintiff spoke to Sewell, he did so with the expectation that Kiewit would
5  investigate his unlawful discharge, but Kiewit did not.

6  37. In August of 2007, Plaintiff filed a complaint with the California Department of Fair
7  Employment and Housing, Case No. E200708M0533-00-fpe/37AA808047, NOBLE/KIEWIT
8  PACIFIC CO.

9  38. On January 18, 2008, at Plaintiff's request, the California Department of Fair
10 Employment and Housing issued to Plaintiff a Right-To-Sue Notice. Plaintiff now brings this action.

**FIRST CAUSE OF ACTION**
Action to Enforce or Clarify Rights Under ERISA Plan
(Against Defendants Plan Administrator and Plan)
29 U.S.C. § 1132(a)(1)(B)

39. Plaintiff incorporates each allegation set forth in paragraphs 1-38.

40. At all relevant times, Plaintiff was a "participant" of the Plan within the meaning of 29 USC § 1132(a)(1).

41. At all relevant times, Plaintiff Charlene R. Noble was a "beneficiary" of the Plan within the meaning of 29 USC § 1132(a)(1).

42. While the Plan was in full force and effect, Plaintiffs were entitled to receive present and future health benefits under the Plan.

43. Defendants have wrongfully denied plaintiffs benefits under the plan and have taken the incorrect position that plaintiffs are not entitled to future benefits under the Plan including, but not limited to, future life insurance benefits of $200,000 upon the death of Plaintiff.

44. Pursuant to 29 U.S.C. § 1132(a)(1)(B), plaintiffs seek judgment against the Plan and the Plan Administrator awarding plaintiffs any and all benefits due to them under the terms of the Plan, enforcing their rights under the terms of the Plan, and clarifying their rights to future benefits under the terms of the Plan.

### SECOND CAUSE OF ACTION
Breach of Fiduciary Duty under ERISA
(Against Defendants Plan Administrator, Kiewit, Life Insurance Company, Hartford, Jansen, Phelps, and Sewell)
29 U.S.C. §§ 1104(a)(1); 1109; 1132(a)(2)

45. Plaintiff incorporates each allegation set forth in paragraphs 1-44.

46. At all material times herein, defendants Plan Administrator, Kiewit, Life Insurance Company, Jansen, and Phelps were fiduciaries with respect to their exercise of authority over the management of the Plan, disposition of Plan assets, and administration of the Plan.

47. Defendants, and each of them, were obligated to discharge their duties solely in the interests of beneficiaries and participants of the Plan for the exclusive purpose of providing beneficiaries and participant benefits, promptly and accurately advising all beneficiaries of their rights under the plan, defraying reasonable expenses of the Plan, and using all prudent skill and diligence in accordance with the documents and instruments covering the Plan.

48. Defendants, and each of them, breached their fiduciary duties, as alleged above, with respect to Plaintiffs and other beneficiaries and participants.

49. Plaintiffs assert a breach of fiduciary duty against these defendants on behalf of and for the benefit of the Plan.

50. Plaintiffs request a judgment (a) permanently enjoining these defendants from further failing to comply with the terms of the Plan; and (b) requiring these defendants to restore coverage to all beneficiaries, including plaintiffs, whose coverage was improperly denied to them.

### THIRD CAUSE OF ACTION
Discrimination On The Basis Of Disability/Medical Condition:
Failure To Engage In The Interactive Process
(Against Defendants Kiewit, Jansen, Phelps and Sewell)

51. Plaintiff incorporates each allegation set forth in paragraphs 1-38.

52. Pursuant to the California Fair Employment and Housing Act ("FEHA"), including Cal. Gov. Code §§ 12940(n) and 12926.1(e), defendants were legally mandated to engage in a timely, good faith interactive process in response to Plaintiff's request for reasonable accommodation based on his known medical condition.

53. Defendants were aware of Plaintiff's medical condition from January 2007 onward, but

Complaint, Case No.                                        8

1 made no attempt to engage Plaintiff in any interactive process to determine what accommodations
2 would be necessary for him to perform his job.

3   54. Defendants discriminated against Plaintiff on the basis of his disability, by failing to
4 engage in the interactive process. As a proximate cause of this discrimination Plaintiff suffered and
5 continues to suffer substantial losses in earnings; humiliation, emotional distress, mental and physical
6 pain and anguish, all to his damage in a sum according to proof. In light of Defendant's willful,
7 knowing and intentional discrimination against Plaintiff, Plaintiff seeks an award of punitive and
8 exemplary damages in an amount according to proof; further, plaintiff has incurred and continues to
9 incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of these
10 expenses and fees and prays leave of court to amend this complaint when the amounts are more fully
11 known.

## FOURTH CAUSE OF ACTION
Discrimination On The Basis Of Disability/Medical Condition: Failure To Accommodate
(Against Defendants Kiewit, Jansen, Phelps and Sewell)

55. Plaintiff incorporates each allegation set forth in paragraphs 1-38 and 52-54.

56. Pursuant to FEHA, including Cal. Gov. Code § 12940(m), Defendants had an affirmative duty to make reasonable accommodations to Plaintiff for his known disabilities to enable him to perform the essential functions of his position.

57. Pursuant to Cal. Gov. Code § 12926(n), such accommodations include, but are not limited to, job restructuring, offering part-time or modified work schedules, reassigning to a vacant position, acquiring or modifying equipment or devices, other similar accommodations.

58. Defendants did not extend reasonable accommodations to Plaintiff prior to terminating his employment.

59. Defendants discriminated against Plaintiff on the basis of his disability because they failed to provide him with accommodations, in violation of the California Fair Employment and Housing Act. As a proximate cause of this discrimination Plaintiff suffered and continues to suffer substantial losses in earnings; humiliation, emotional distress, mental and physical pain and anguish, all to his damage in a sum according to proof. In light of Defendant's willful, knowing and intentional discrimination against Plaintiff, Plaintiff seeks an award of punitive and exemplary

Complaint, Case No.                                    9

1  damages in an amount according to proof; further, plaintiff has incurred and continues to incur legal
2  expenses and attorney fees.  Plaintiff is presently unaware of the precise amount of these expenses
3  and fees and prays leave of court to amend this complaint when the amounts are more fully known.

### FIFTH CAUSE OF ACTION
Discrimination On The Basis Of Medical Condition: Wrongful Discharge from Employment on the Basis of Medical Condition
(Against Defendants Kiewit, Jansen, Phelps, and Sewell)

60. Plaintiff incorporates each allegation set forth in paragraphs 1-38 and 52-59.

61. Pursuant to FEHA, including Cal. Gov. Code § 12940(a) and (c), an employer may not bar or discharge a person from employment based on an individual's medical condition.

62. Defendants committed unlawful discrimination by discharging him solely because of his medical condition.

63. As a proximate cause of that discrimination Plaintiff suffered and continues to suffer substantial losses in earnings; humiliation, emotional distress, mental and physical pain and anguish, all to his damage in a sum according to proof.  In light of Defendant's willful, knowing and intentional discrimination against Plaintiff, Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof; further, plaintiff has incurred and continues to incur legal expenses and attorney fees.  Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

### SIXTH CAUSE OF ACTION
Tortious Termination in Violation Of Public Policy
(Against Defendants Kiewit, Jansen, Phelps and Sewell)

64. Plaintiff incorporates each allegation set forth in paragraphs 1-38 and 52-63.

65. An employer-employee relationship existed between Plaintiff and Defendants.

66. Defendants' termination of Plaintiff's employment was a violation of public policy. There was a nexus between Plaintiff's termination and Plaintiff's protected rights pertaining to his disability and medical condition.  The public policy of the State of California is set forth in the California Fair Employment and Housing Act, which prohibits discrimination and discharge on the basis of disability and medical condition.

67. As a proximate cause of this tortious termination, Plaintiff suffered and continues to

suffer substantial losses in earnings; humiliation, emotional distress, mental and physical pain and anguish, all to his damage in a sum according to proof. In light of Defendant's willful, knowing and intentional discrimination against Plaintiff, Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof; further, plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

## SEVENTH CAUSE OF ACTION
### Breach Of Contract
### (Against Defendant Kiewit)

68. Plaintiff incorporates each allegation set forth in paragraphs 1-38 and 52-67.

69. There existed between Plaintiff and Defendant and implied-in-fact contract not to discharge without good cause. Such a contract was established by a course of conduct, including oral representations. Plaintiff relied on those actions and representations to his detriment.

70. Defendants breached the implied-in-fact employment contract by discharging Plaintiff without good cause on May 1, 2007.

71. As a proximate cause of this breach of contract Plaintiff suffered and continues to suffer damage in a sum according to proof.

## EIGHTH CAUSE OF ACTION
### Breach Of The Implied Covenant Of Good Faith And Fair Dealing:
### (Against Defendant Kiewit)

72. Plaintiff incorporates each allegation set forth in paragraphs 1-38 and 52-71.

73. The employment relationship between Plaintiff and Kiewit is fundamentally contractual. Inherent in that contractual relationship is a covenant of good faith and fair dealing, which implies a promise that each party will refrain from doing anything to injure the other's right to receive the benefits of the agreement and which protects the parties' reasonable expectations.

74. The provisions of the California Labor Code are implied by law into all employment agreements, including the employment agreement entered into between Plaintiff and Defendant.

75. By engaging in the conduct as alleged herein, Defendant breached the implied covenant of good faith and fair dealing.

76. As a proximate cause of that breach of covenant of good faith and fair dealing, Plaintiff

suffered and continues to suffer damage in a sum according to proof.

WHEREFORE, Plaintiff requests relief as hereafter provided.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows:

1. For compensatory damages according to proof and prejudgment interest thereon to the extent allowable by law;

2. For equitable and injunctive relief;

3. For exemplary and punitive damages according to proof;

4. For attorney fees and costs;

5. For such other and further relief as the court may deem proper.

## REQUEST FOR JURY TRIAL

Plaintiffs requests a trial by jury for all issues that are so triable.

Dated: January 28, 2008                 By: _____
                                        Ron C. Finley
                                        Alfredo A. Bismonte
                                        Craig Alan Hansen
                                        Beck, Ross, Bismonte & Finley, LLP
                                        Fairmont Plaza
                                        50 West San Fernando Street, Suite 1300
                                        San Jose, CA  95113
                                        Phone:  (408) 938-7900
                                        Fax:  (408) 938-0790

                                        Mark E. Zeller, Esq.
                                        Law Offices of Mark Edward Zeller
                                        2255 Contra Costa Blvd., Suite 304
                                        Pleasant Hill, CA 94523
                                        Tel: (925) 363-5848
                                        Fax: (925) 363-7454

                                        Attorneys for Plaintiffs
                                        Richard A. Noble and Charlene R. Noble

CERTIFICATION OF INTERESTED PARTIES

Pursuant to Civil L.R. 3-16, the undersigned certifies that (in addition to the parties listed in the action) the following listed persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) could have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceedings: CIGNA Corporation (possible parent of Defendant Life Insurance Company of North America).

Dated: January 28, 2008

By: _____
Ron C. Finley
Alfredo A. Bismonte
Craig Alan Hansen
Beck, Ross, Bismonte & Finley, LLP
Fairmont Plaza
50 West San Fernando Street, Suite 1300
San Jose, CA 95113
Phone: (408) 938-7900
Fax: (408) 938-0790

Attorneys for Plaintiffs
Richard A. Noble and Charlene R. Noble

Complaint, Case No.                    13