SEYFARTH SHAW LLP
Kari Erickson Levine (State Bar No. 146101) klevine@seyfarth.com
Adrienne E. Nelson (State Bar No. 209305) anelson@seyfarth.com
560 Mission Street, Suite 3100
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Attorneys for Defendants:
KIEWIT PACIFIC CO., PETER KIEWIT SONS', INC.
HEALTH AND WELFARE PLAN,
PETER KIEWIT SONS', INC, JOHN JANSEN,
MICHAEL PHELPS and JANE SEWELL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD A. NOBLE, and CHARLENE R. NOBLE<br><br>Plaintiff,<br><br>v.<br><br>KIEWIT PACIFIC CO., LIFE INSURANCE COMPANY OF NORTH AMERICA, PETER KIEWIT SONS', INC. HEALTH AND WELFARE PLAN, PETER KIEWIT SONS', INC, JOHN JANSEN, MICHAEL PHELPS and JANE SEWELL.<br><br>Defendants. | Case No. C08-00-666-SI<br><br>**DECLARATION OF KARI ERICKSON LEVINE IN SUPPORT OF DEFENDANTS' OPPOSITION TO EXPEDITED MOTION AND MOTION FOR EXPEDITED DEPOSITION**<br><br>Date:<br>Time:<br>Judge:    Hon. Susan Illston<br>Dept:    Courtroom 10, 19th Floor |

I, Kari Erickson Levine, declare as follows:

1.    I am an attorney-at-law duly licensed to practice before all courts of the State of California, and am a Partner in the law firm of Seyfarth Shaw, attorneys of record for Defendants KIEWIT PACIFIC CO., PETER KIEWIT SONS', INC. HEALTH AND WELFARE PLAN, PETER KIEWIT SONS', INC, JOHN JANSEN, MICHAEL PHELPS and JANE SEWELL ("Kiewit Defendants") in this case. I make this declaration in support of Defendants' Opposition to Plaintiffs' Expedited Motion and Motion for Expedited Deposition of Plaintiff Noble.

1

2.      I have personal knowledge of the facts stated herein and if called to testify thereto, I could and would competently do so.

3.      On January 28, 2008, Plaintiffs Richard Noble and Charlene Noble ("Plaintiffs" or "the Nobles") filed a complaint alleging eight (8) causes of action arising out of Mr. Noble's former employment with the Kiewit Defendants.

4.      Mr. Noble's last day of work with the Kiewit Defendants was January 11, 2007. His employment was terminated effective May 1, 2007.

5.      On September 18, 2007, Kiewit ("Kiewit" or "the company") received a letter from counsel originally engaged by Mr. Noble, Mark E. Zeller.  Among other things, Mr. Zeller requested that Mr. Noble **be reinstated** and accommodated so that he could perform the essential functions of his position.  A true and correct copy of Mr. Zeller's September 18, 2007 letter as received by my office is attached hereto as **Exhibit A**.

6.      On October 5, 2007 the company responded and requested information regarding Mr. Noble's current medical condition and any restrictions to determine what work he could perform with or without accommodation.  A true and correct copy of Kiewit's October 5, 2007 letter as received by my office is attached hereto as **Exhibit B**.

7.      On October 8, 2007 Kiewit informed Mr. Zeller that Mr. Noble had left a message for the company indicating he may be able to return to work.  A true and correct copy of Kiewit's October 8, 2007 letter as received by my office is attached hereto as **Exhibit C**.

8.      After business hours on October 8, 2007 Mr. Zeller left a voice mail message for Kiewit wherein he indicated, among other things, that Mr. Noble "can do almost all of the essential functions of the job…almost entirely the job he was doing before with some minor adjustments, rest breaks, etc."  A true and correct copy of a transcription of Mr. Zeller's voice mail message left for Kiewit on October 8, 2007, as received by my office, is attached hereto as **Exhibit D**.

9.      On October 15, 2007 Kiewit verbally offered Mr. Noble the position of HR Training Manager (at the same salary level as his prior position).  Mr. Noble indicated that he wished the discussion regarding the position to go through his counsel.  Therefore, in a letter

2

1  dated October 15, 2007 Kiewit communicated its desire to have Mr. Noble return to work in the

2  position of HR Training Manager, with or without accommodations.  A true and correct copy of

3  Kiewit's October 15, 2007 letter as received by my office is attached hereto as **Exhibit E**.

4      10.    On October 16, 2007, Mr. Zeller informed Kiewit that Mr. Noble was pursing his

5  DFEH complaint, advised that no one from the company should have contact with Mr. Noble

6  and indicated that Mr. Noble "will no longer communicate with Kiewit regarding any aspect of

7  this case."  A true and correct copy of Mr. Zeller's October 16, 2007 letter as received by my

8  office is attached hereto as **Exhibit F**.

9      11.    On October 26, 2007, Kiewit requested clarification and reiterated that Mr.

10  Noble's return to work would be without prejudice to any claims he may assert for past conduct

11  or events.  A true and correct copy of Kiewit's October 26, 2007 letter as received by my office

12  is attached hereto as **Exhibit G**.

13      12.    On October 26, 2007 Mr. Zeller advised Kiewit that Mr. Noble intended to file

14  suit.  He did not mention whether Mr. Noble was able to/desirous of returning to work.  A true

15  and correct copy of Mr. Zeller's October 26, 2007 letter as received by my office is attached

16  hereto as **Exhibit H**.

17      13.    On October 30, 2007 the company again requested clarification regarding Mr.

18  Noble's ability/desire to return to work.  No response was provided regarding this particular

19  issue.  A true and correct copy of Kiewit's October 30, 2007 letter as received by my office is

20  attached hereto as **Exhibit I**.

21      14.    October 23, 2007 the company received notice of Mr. Noble's DFEH filing.

22      15.    On November 14, 2007, after the HR Manager in the District resigned, the

23  company offered Mr. Noble his former position as HR Manager and requested that Mr. Noble

24  provide a release to return to work from his medical provider (again, without prejudice to any

25  claims he asserts against the Company related to past conduct).  Kiewit advised that a response

26  was required by November 27 (later extended to November 30) as the position needed to be

27  filled.  A true and correct copy of Kiewit's November 14, 2007 letter as received by my office is

28  attached hereto as **Exhibit J**.

3

1    16.    On November 23, 2007 Mr. Zeller advised that Mr. Noble needed "additional

2  time" to coordinate the medical authorizations required.  A true and correct copy of Mr. Zeller's

3  November 23, 2007 letter as received by my office is attached hereto as **Exhibit K**.  When no

4  further communication was received, the HR Manager position was filled.

5    17.    On January 7, 2008 Mr. Zeller indicated that "while the offer looks interesting,

6  [Mr. Noble] knows that there have been some changes since he left, and that the staffing

7  structure may be different."  He indicated that Mr. Noble "is willing to entertain" the offer, but

8  "simply needs more information."  He "needs understanding of staffing and support structure"

9  and "detailed job description."  Counsel reiterated that Mr. Noble "has always been willing to

10  work."  ***No mention is made of the fact that Mr. Noble is terminally ill or unable to return to***

11  ***work given his cancer or the medications prescribed for it or pain as a result of his condition.***

12  A true and correct copy of Mr. Noble's January 7, 2008 letter as received by my office is

13  attached hereto as **Exhibit L**.

14    18.    On January 15, 2008 Kiewit advised Mr. Zeller that the position had been filled

15  during the month period within which no response was received from Mr. Noble.  No further

16  correspondence was received from Mr. Zeller.  A true and correct copy of Kiewit's January 15,

17  2008 letter as received by my office is attached hereto as **Exhibit M**.

18    19.    On January 18, 2008 the company received notice that Mr. Noble requested a

19  right-to-sue letter and case closure of his DFEH charge.

20    20.    On Monday, January 28, 2008 Plaintiffs filed the instant action in federal court,

21  having engaged additional counsel to represent him in the action.

22    21.    On Thursday, January 31, 2008, for the very first time, Kiewit received notice

23  from Mr. Noble's new counsel, Beck, Ross, Bismonte & Finley, Ron C. Finley, that "Mr. Noble

24  is dying from cancer…[and his] condition is growing progressively worse and his doctors have

25  advised him that he may have **less than one month** to live.  I hope and trust that you would

26  agree that under these dire circumstances, all parties to this matter share the collective interest of

27  securing Mr. Noble's testimony as soon as possible.  In order to reach that common goal, we ask

28  that you agree to accept service on behalf of all Kiewit-related defendants (i.e., all defendants

4

DECLARATION OF KARI ERICKSON LEVINE IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY /                    Case No. C08-00-666-SI

1   other than Life Insurance Company of North America.)  If you are agreeable, please let us know

2   as soon as possible.  If so, we will forward all service papers to your attention.  **Moreover, we**

3   **request that you stipulate to the taking of Mr. Noble's deposition on an expedited basis**

4   **prior to the Rule 26(f) conference.**  We will also direct similar requests to the Life Insurance

5   Company of North America."  A true and correct copy of Mr. Finley's January 31, 2008 e-mail

6   as received by my office is attached hereto as **Exhibit N**.  Counsel requested that Kiewit call him

7   by the close of business **the next day**, Friday,  February 1, 2008 or they would petition the court

8   for an expedited deposition as early as the following week (February 4, 2008).

9       22.     On February 1, 2008 I contacted Mr. Noble's new counsel by email and requested

10  medical documentation of Mr. Noble's current prognosis.  I made the request for medical

11  documentation because it was curious to me how on January 7, just twenty-four (24) days prior

12  to counsel's January 31 representation the Mr. Noble had less than a month to live, Mr. Noble's

13  counsel Mr. Zeller suggested that Mr. Noble was able to return to work.

14      23.     I did not receive medical documentation until after 3:00 p.m. on February 7, 2008

15  when I received the declaration of Mr. Noble's oncologist.

16      24.     Counsel for Mr. Noble demanded a stipulation regarding expedited discovery

17  within 24 hours (by February 8, 2008) and threatened the instant motion if he did not obtain the

18  stipulation for an expedited deposition **during the very weeks that I advised counsel I was**

19  **unavailable**.

20      25.     Given that the oncologist declaration does not support counsel's representation

21  that Mr. Noble has less then a month to live, and given the extreme prejudice to the Defendants

22  which will be occasioned by an expedited deposition before any discovery and without the

23  benefit of any of Mr. Noble's documents or medical records (and before pleading errors and

24  standing issues are addressed by the court), Defendants oppose the taking of an expedited

25  deposition.

26      26.     In addition to the prejudice to Defendants of an expedited deposition prior to Rule

27  26 disclosures, as I advised counsel for Mr. Noble, I am out-of-state the weeks of February 11,

28  February 18 and February 25.  I am currently in Honolulu taking Plaintiff depositions in an

5

1    EEOC class action and return on a red-eye flight on Tuesday evening, February 19.  I leave on

2    Monday morning, February 25 to take another week of Plaintiff depositions in the same case,

3    this time in Seattle, Washington.

4         27.     Given the facts as set forth in the oncologist's declaration, and balancing her

5    medical opinion that the deposition should take place "as soon as possible given his level of

6    pain," Defendants are agreeable to working with counsel to schedule Mr. Noble's deposition.

7    However, Defendants believe that to avoid substantial prejudice the court should order that

8    Plaintiffs provide Rule 26 disclosures in advance of the deposition, including all health care

9    provider records, as well as all correspondence, notes, letters, or other documents upon which the

10   Nobles intend to rely to support their claims.

11        I declare under penalty of perjury under the laws of the United States that the foregoing is

12   true and correct.

13        Executed this 12th day of February 2008, at Honolulu, Hawaii.

14

15                         /s/ Kari Erickson Levine
                      Kari Erickson Levine

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF KARI ERICKSON LEVINE IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY /         Case No. C08-00-666-SI

# EXHIBIT A

**LAW OFFICE OF MARK EDWARD ZELLER**
**1990 NORTH CALIFORNIA BLVD., SUITE 830**
**WALNUT CREEK, CA 94523**
**925-932-7032**
**925-932-7033**

September 18, 2007

Don Greenbaum, Ph.D.
Human Resources
Kiewit Pacific Company
500 Marsh Drive
Concord, CA 94520
**BY CERTIFIED MAIL**

**Re: Richard Noble: California Fair Employment and Housing Claim; Wrongful**
**Discharge in Violation of Public Policy; Breach of Contract**

Dear Mr. Greenbaum,

This letter will advise you that Richard Noble has filed a claim which has been accepted for investigation with the California Department of Fair Employment and Housing; relevant cross filing will occur with the United States Equal Employment Opportunity Commission.

Mr. Noble was egregiously harmed in violation of his civil rights by the treatment he received on account of his cancer and disability. Your company failed to accommodate this disability; additionally, your company's dereliction of duty to provide Mr. Noble with appropriate information and application material to pursue life insurance post wrongful termination has placed Mr. Noble's family in danger of loss.

Minimally, we insist that Mr. Noble be reinstated in his former position. Additionally, we require that he be given the appropriate accommodations to perform the essential functions of his job. Finally, we require that your company provide and facilitate all necessary life insurance for Mr. Noble which is commensurate with the life insurance benefits he enjoyed pre-wrongful termination.

Please contact my office within 10 days of the date of this letter. If I do not receive an answer from you I will recommend that Mr. Noble file all appropriate actions including civil complaints for Breach of Contract and Wrongful Discharge in Violation of Public Policy. These claims do not require exhaustion of administrative remedies or prior claims with the DFEH.

Sincerely,

*Mark Edward Zeller*
Mark Edward Zeller

Cc: Richard Noble
    Herbert Yarbrough, *District Administrator, DFEH*

# EXHIBIT B



**GLENN SUMMERS**
Assistant General Counsel
(402) 271-2864  (402) 271-2830 Fax
glenn.summers@kiewit.com

October 5, 2007

BY FACIMILE AND U.S. MAIL

Mr. Mark Edward Zeller
1990 North California Blvd., Suite 830
Walnut Creek, CA 94523

Re:  Richard Noble

Dear Mr. Zeller:

I am an in-house attorney for Kiewit Pacific Co., and this letter is in response to your letter of September 18, 2007, to Don Greenbaum. Please direct any future correspondence on this matter to my attention.

Your letter asserts in conclusory terms, with no supporting facts, that Kiewit wrongfully terminated Mr. Noble, refused to accommodate his disability, and failed to provide him with information to continue his life insurance. None of these assertions is correct.

Mr. Noble stated in writing that his last day of work was January 11, 2007, in his application for Short Term Disability. Though not required to, the Company kept him on the payroll through May 1, 2007, even though he was unable to come to work. Mr. Noble's employment was formally separated on May 1, 2007. (See the enclosed letter from John Jansen to Mr. Noble). Though not required to, the Company provided Mr. Noble the sum of $9,499.27, to cover his COBRA payments through November 30, 2007. This amount was sufficient to cover Mr. Noble's estimate to Mr. Jansen as to when he might be able to work again. Throughout, Mr. Jansen has made it clear to Mr. Noble that when he feels he can work again, to contact Mr. Jansen.

The Company has no information on Mr. Noble's status, or what work he might be able to perform with or without reasonable accommodation. If Mr. Noble feels he can work again, he should contact Mr. Jansen (as previously requested), and the Company will evaluate what positions are available and whether reasonable accommodations exist.

Mr. Mark Edward Zeller
October 5, 2007
Page 2


With respect to the supplemental life insurance, on May 2, 2007, Mr. Noble was provided all the material necessary for him to continue his life insurance. Mr. Noble did not return the premium and application to the life insurance provider, Cigna. As set forth in the attached letter from Jane Sewell to Mr. Noble (August 6, 2007), Cigna is a third-party provider, and Kiewit has no control over its application policies and procedures.

In summary, the Company has been sensitive to Mr. Noble's difficult situation, and has gone more than the extra mile in trying to help Mr. Noble. There is no basis for the legal claims set forth in your letter.


Sincerely,

Glenn Summers
Assistant General Counsel

Enclosure

c:  John Jansen
    Don Greenbaum



May 1, 2007

Mr. Richard Noble
4266 Dubhe Court
Concord, CA 94521

Dear Richard,

Thank you for your April 19, 2007 correspondence. I am glad to hear that your treatments are progressing and you are doing well.

In your note and attached medical provider certification, the estimated date of return is late summer or early fall. Due to the extended time before returning to work, Kiewit is changing your status to an administrative separation of employment. This designation occurs on May 1, 2007 and will allow Kiewit to continue your benefits via COBRA. With your designation to COBRA within the allotted time frame, your medical, dental and supplemental life benefits will continue. In addition, Kiewit has enclosed a one time lump sum of $9499.27 (grossed up by $3671.47 for taxes) to cover the monthly payments of $971.30 through November 30, 2007.

As we have discussed, I am very interested in having you return to Kiewit and believe your talents can help us in our Human Resource Journey. We have considered different options to help you and continue to look forward to your return to good health and Kiewit.

If you have any questions, please do not hesitate to contact me.

Sincerely,

John Jansen

KIEWIT PACIFIC CO.
5000 Marsh Drive, Concord, CA 94520-5322
(925) 686-3000      (925) 687-5143 fax



VIA FEDERAL EXPRESS

August 6, 2007

Mr. Richard Noble
4266 Dubhe Court
Concord, CA 94521

Dear Richard:

As we discussed last Thursday, I am sending this letter to confirm and provide more detail on the status of your benefits issues.

Long-Term Disability (LTD):   The application procedures and eligibility requirements for LTD are not within the control of Kiewit, but rather in control of the insurer, Hartford Life Insurance Company.  The Long-Term Disability policy requires that an employee apply for conversion within 31 days of the termination of your Long-Term Insurance.  I understand you did not make that application.

Also, while eligibility decisions are determined by Hartford Life Insurance Company, it is our understanding that you would not have been eligible for the LTD conversion if you had applied due to you not meeting the eligibility requirements indicated on the LTD Conversion Application.  The Application states that conversion is not available to employee's that have not worked for the company's current and prior Group Long Term Disability Plan for at least 12 months and any disability preventing the individual from performing the duties of his/her occupation at the time of the individual's termination.

Your last day of work, as you set forth in your Short-Term Disability (STD) application, was January 11, 2007.  Therefore you were employed by Kiewit less than one year.  That rendered you ineligible for FMLA leave and Short-Term Disability. Submitting a Long-Term Disability claim requires that the employee be active and employed at the time of application.  Being on Short-Term Disability and FMLA leave is considered "active and employed" under the terms of the Long-Term Disability policy.  Because you were not eligible for STD and FMLA, it is our understanding of the Hartford policy that you would not have been eligible for LTD if you had applied.

Mr. Richard Noble
August 6, 2007
Page 2

Continuation of Supplemental Life:  Like the LTD, the procedures and eligibility
requirements for continuation of Supplemental Life are not within the control of Kiewit,
but rather within the control of the insurer, Cigna.  To continue Supplemental Life
coverage after employment, you were required to provide your application and premium
payment within 31 days of the termination of your Supplemental Life Insurance.  I
understand you did not provide the application and premium to Cigna, so you became
ineligible to continue the Supplemental Life.

Information on these application procedures was provided in John Jansen's May 1, 2007
letter to you and in the materials the Benefits Department sent to you on May 2, 2007.  It
was also contained in the Company's Summary Plan Description provided to you
February 2, 2006 (upon employment), January 17, 2006 (upon STD application) and
March of 2007 (mailing of SPD's due to transition to Cigna).

Richard, I wish I had better news on these benefits issues.  However, as an HR
professional, I'm sure you understand that the Company is restricted by the terms of the
policies through these outside vendors, Hartford and Cigna.  We have no ability to make
an exception to these policies for you.

Please let me know if you have any questions or if there is any additional information I
can provide.

Sincerely,

Jane Sewell/DS

Jane E. Sewell, Manager
Personnel and Recruiting Dept.

c:  John Jansen

# EXHIBIT C

 **Kiewit**

**GLENN SUMMERS**
Assistant General Counsel
(402) 271-2864      (402) 271-2830 Fax
glenn.summers@kiewit.com

October 8, 2007

BY FACSIMILE AND U.S. MAIL

Mr. Mark Edward Zeller
1990 North California Blvd., Suite 830
Walnut Creek, CA 94523

Re:      Richard Noble

Dear Mr. Zeller:

I received the voice mail you left late Friday afternoon in response to my letter of October 5. The focus of your message was the assertion that Mr. Noble did not receive the supplemental life information and that he first learned of the need for application to Cigna through Ms. Sewell's letter of August 6. To the contrary, the Kiewit Benefits Department sent Mr. Noble all necessary papers on May 2, 2007. Enclosed is a copy of the mailing to Mr. Noble. This package of information is automatically generated in the Benefits Department upon receiving a termination notice. The package includes information on COBRA, supplemental life, and other benefits. Note that the information on conversion of supplemental life is set forth on the page entitled "Group Term Life Insurance Conversions," with the need for and dates of required action in bold-face. Note also that Mr. Noble did apply for COBRA (a copy of his completed form is enclosed, received by the Benefits Department on May 22). It is apparent that Mr. Noble timely received the mailing, including the supplemental life information.

More generally, your voice mail stated that the facts of the situation set forth in my letter were wrong, but did not provide any indication where you believe they were wrong. If we are to evaluate the claim in your letter of September 18, we need to know what your understanding of the facts is. For example, is it correct that Mr. Noble stated in writing on the STD application that his last day of work was January 11, 2007? Is it correct that Mr. Noble thereafter was unable to come to work? Is it correct that the Company nonetheless carried him on the payroll until May 1? More fundamentally, we have no information from Mr. Noble or you as to whether, since January 11, he could have performed the essential functions of an HR position, with or without reasonable accommodations.

Mr. Mark Edward Zeller
October 5, 2007
Page 2

The Company has tried to help Mr. Noble through this difficult situation, and if we've somehow done something wrong, we'll make it right. However, the Company cannot evaluate that without an understanding of how you and he see the facts. Certainly it is Mr. Noble's prerogative to file suit at this juncture if he so chooses, but it seems to us the better course is to engage in a dialogue so that both sides have an understanding of the position of the other.

I understand from Mr. Jansen that Mr. Noble left him a message late Friday evening that he may be able to work again. Consistent with the statements that Mr. Jansen made in his letter of May 1, Mr. Jansen intends to return that call today.

In conclusion, we are concerned to have clarity about the specific legal issues you have raised. Please review the discussion above about the life insurance and let me know if there continues to be a controversy on that point.

Sincerely,

Glenn Summers
Assistant General Counsel

Enclosure

c:  John Jansen
    Don Greenbaum

PETER KIEWIT SONS', INC. Welfare B    fits Plan
Notice of Right to Elect COBRA Continuation Coverage

May 2, 2007

Richard A Noble  and Family
4266 Dubhe Court
Concord, CA  94521

---

This notice contains important information about your right to continue your health care coverage under the
Peter Kiewit Sons', Inc. Welfare Benefits Plan (the Plan).

Please read the information contained in this notice very carefully.  This notice provides important
information concerning your rights and what you have to do to continue your health care coverage under the
Plan.  If you have any questions concerning the information in this notice or your rights to coverage, you
should contact Peter Kiewit Sons', Inc. Benefits Department (402) 271-2838.

If you do not elect to continue your health care coverage by completing the "Election Form" located on the
back of this sheet and returning it to the UHCDirectBill, PO Box 14253, Orange, CA 92863-1253, your coverage
under the Plan will end as indicated below:

| | | | |
|---|---|---|---|
| Qualifying Event: | Termination | Event Date: | May 1, 2007 |
| Employee SSN: | 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 | Date Coverage Ends: | May 31, 2007 |

Medical Deductible Amount: $500 (PVC: 0050)        Dental Plan: Yes (PVC: 0032)

| DEPENDENTS | RELATIONSHIP | MEDICAL | DENTAL |
|---|---|---|---|
| Charlene R Noble | Spouse | YES | YES |
| Nicholas L Gizzarelli | Son | YES | YES |
| Richard A Noble II | Son | YES | YES |
| Anthony J Gizzarelli | Son | YES | YES |

Because of the qualifying event listed above your coverage under the Plan will end, you and/or your dependents
are entitled to continue your health care coverage for up to 18 months.

Your continuation coverage will cost:

| Monthly Cobra Rates | | | | |
|---|---|---|---|---|
| Plan | Employee Only (or any single dependent) | Employee/ Spouse | Employee/ Child(ren) | Employee/ Family |
| Medical $500 Ded. | $263.83 | $548.66 | $520.65 | $840.51 |
| Dental | $ 37.11 | $ 61.46 | $ 54.50 | $ 85.81 |

**Important** - The completed Election Form must be post-marked by August 6, 2007. If you do not submit a
completed Election Form by this date, you will lose your right to elect continuation coverage.  Important
information about your rights is provided to you on the pages after the Election Form.

Employer 's Signature _____        Date: _____

## PETER KIEWIT SONS', INC. WELFARE BENEFITS PLAN
## MEDICAL/DENTAL COBRA CONTINUATION COVERAGE ELECTION FORM
### Policy No. 702561

1. If you wish to continue you and/or your dependent's Medical and/or Dental coverage please complete this form.
2. Return this form and initial premium payment made payable to "UHCDirectBill", P.O.Box 14253 Orange, CA 92863-1253 (866)214-2982. An envelope has been enclosed for your convenience.

## Personal Information

Former Employee: _____ SSN: _____

Qualified Beneficiary (if different from Former Employee): _____ SSN: _____

Address: _____
        *Street*                                           *City*           *State*        *ZIP*

Date of Birth: _____ Sex:   Male    Relationship to Former Employee:    Self
                                      Female         (Please circle)         Spouse

Daytime Phone No. _____                                           Child

*You may elect to keep the same coverage you currently had, or elect only medical or only dental coverage. You can drop dependents but you can not add dependents that were not previously covered. For example if you had family coverage, you may change to individual coverage.*

## Your Benefits (Indicate your benefit choices by checking the appropriate boxes.)

### Medical

Medical Plan    ☐ You    ☐ You/Spouse    ☐ You/Child(ren)    ☐ You/Family (for premium amount, see on other side)

### Dental

Dental Plan    ☐ You    ☐ You/Spouse    ☐ You/Child(ren)    ☐ You/Family (for premium amount, see on other side)

**Please indicate below the dependents that are to be covered under your benefit plan(s) (if applicable).**

| Name (last, first) | Spouse/ Child | Date of Birth | Student (Y/N) | Provide address if different | Medical √ | Dental √ |
|---|---|---|---|---|---|---|
| | | / / | | | | |
| | | / / | | | | |
| | | / / | | | | |
| | | / / | | | | |
| | | / / | | | | |

## Authorization

I have read and understand my rights to continue health coverage as explained in the "COBRA Continuation Coverage Rights." I hereby request the COBRA Continuation coverage(s). I understand that failure to make timely payment of required premiums will result in permanent loss of this coverage.

_____               _____
       **Your Signature**                                             **Date**

CERTIFICATE OF GROUP HEALTH PLAN COVERAGE
05/02/2007

--------------------------------------------------------------------------------
* IMPORTANT - This certificate provides evidence of your prior health coverage. You may need to furnish this certificate
if you become eligible under a group health plan that excludes coverage for certain medical conditions that you have be-
fore you enroll. This certificate may need to be provided if medical advice, diagnosis, care or treatment was recommended
or received for the condition within the 6-month period prior to your enrollment in the new plan. If you become covered
under another group health plan, check with the plan administrator to see if you need to provide this certificate. You
may also need this certificate to buy, for yourself or your family, an insurance policy that does not exclude coverage
for medical conditions that are present before you enroll.
--------------------------------------------------------------------------------

Participant          :   Noble,Richard A
                         Participant ID:    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
                         4266 Dubha Court
                         Concord, CA 94521


Plan Administrator :    Peter Kiewit Sons', Inc.
                         Welfare Benefits Plan
                         P.O. Box 31096
                         Omaha,NE 68131
                         Phone#: 402/271-2638

| Plan Type | Enroll/ Term Date | Group Health Plan/ Provider/ Group ID | Coverage | Covered Dependents | Dependent Birthdate | Dependent SSN |
|-----------|-------------------|----------------------------------------|----------|--------------------|---------------------|---------------|
| Medical   | Term 06/01/2007   |                                        |          |                    |                     |               |
|           | Elect 03/01/2006  | UnitedHealthcare @500 Ded. UnitedHealthcare 792561 | Family | Noble,Charlene R Gizzarelli,Nicholas L Noble II,Richard A Gizzarelli,Anthony J | 11/01/1966 08/30/1986 01/31/1989 12/10/1992 | |

                         -----------------------------------------------------------------
                         Coverage Begin      : 03/01/2006      Waiting Period Began:  Not Applicable
                         Coverage Ended      : 05/01/2007      Creditable Coverage :  457 Days

# Peter Kiewit Sons', Inc. Welfare Benefits Plan
## Important Information About Your
## COBRA Continuation Coverage Rights

### What is continuation coverage?

Federal law requires that most group health plans (including this Plan) give employees and their families the opportunity to continue their health care coverage when there is a "qualifying event" that would result in a loss of coverage under an employer's plan. Depending on the type of qualifying event, "qualified beneficiaries" can include the employee covered under the group health plan, a covered employee's spouse, and dependent children of the covered employee.

Continuation coverage is the same coverage that the Plan gives to other participants or beneficiaries under the Plan who are not receiving continuation coverage. Each qualified beneficiary who elects continuation coverage will have the same rights under the Plan as other participants or beneficiaries covered under the Plan, including open enrollment and special enrollment rights. The persons listed on page one of this notice have been identified by the Plan as qualified beneficiaries entitled to elect continuation coverage. Specific information describing continuation coverage can be found in the Plan's Summary Plan Description (SPD), which can be obtained from the Plan Administrator, Peter Kiewit Sons', Inc., 1000 Kiewit Plaza, Omaha, NE 68131, (402) 271-2808.

### How long will continuation coverage last?

In the case of a loss of coverage due to end of employment or reduction in hours of employment, coverage may be continued for up to 18 months from the date coverage would otherwise end. In the case of loss of coverage due to an employee's death, divorce or legal separation, the employee's enrollment in Medicare or a dependent child ceasing to be a dependent under the terms of the plan, coverage may be continued for up to 36 months from the date coverage would otherwise end. Page one of this notice shows the maximum period of continuation coverage available to the listed qualified beneficiaries.

Continuation coverage will be terminated before the end of the maximum period if any required premium is not paid on time, if a qualified beneficiary becomes covered under another group health plan that does not impose any pre-existing condition exclusion for a pre-existing condition of the qualified beneficiary, if a covered employee enrolls in Medicare, or if the employer ceases to provide any group health plan for its employees. Continuation coverage may also be terminated for any reason the Plan would terminate coverage of participant or beneficiary not receiving continuation coverage (such as fraud).

### How can you extend the length of continuation coverage?

If you elect continuation coverage, an extension of the maximum period of 18 months of coverage may be available if a qualified beneficiary is disabled or a second qualifying event occurs. You must notify the Plan Administrator, Peter Kiewit Sons', Inc., 1000 Kiewit Plaza, Omaha, NE 68131, (402) 271-2838 of a disability or a second qualifying event in order to extend the period of continuation coverage. Failure to provide notice of a disability or second qualifying event may affect the right to extend the period of continuation coverage.

### *Disability*

An 11-month extension of coverage may be available if any of the qualified beneficiaries is disabled. **The Social Security Administration (SSA) must determine that the qualified beneficiary was disabled at some time during the first 60 days of continuation coverage, and you must notify the Plan Administrator, Peter**

Kiewit Sons', Inc., 1000 Kiewit Plaza, Omaha, NE 68131, (402) 271-2838 of that fact within 60 days of the SSA's determination and before the end of the first 18 months of continuation coverage.

All of the qualified beneficiaries listed on page one of this notice who have elected continuation coverage will be entitled to the 11-month disability extension if one of them qualifies. If the qualified beneficiary is determined by SSA to no longer be disabled, you must notify the Plan Administrator, Peter Kiewit Sons', Inc., 1000 Kiewit Plaza, Omaha, NE 68131, (402) 271-2838 of that fact within 30 days of SSA's determination.

## _Second Qualifying Event_

An 18-month extension of coverage will be available to spouses and dependent children who elect continuation coverage if a second qualifying event occurs during the first 18 months of continuation coverage. The maximum amount of continuation coverage available when a second qualifying event occurs is 36 months from the date coverage would otherwise end. Such second qualifying events include the death of the covered employee, divorce or legal separation of the covered employee and his/her spouse, the covered employee's enrolling in Medicare, or a dependent child's ceasing to be eligible for coverage as a dependent under the Plan. You must notify the Plan Administrator, Peter Kiewit Sons', Inc., 1000 Kiewit Plaza, Omaha, NE 68131, (402) 271-2838 within 60 days after the date coverage would otherwise end as a result of the second qualifying event.

## How can you elect continuation coverage?

Each qualified beneficiary listed on page one of this notice has an independent right to elect continuation coverage. For example, both the employee and the employee's spouse may elect continuation coverage, or only one of them. Parents may elect to continue coverage on behalf of their dependent children only. A qualified beneficiary must elect coverage by the date specified on the Election Form. Failure to do so will result in loss of the right to elect continuation coverage under the Plan. A qualified beneficiary may change a prior rejection of continuation coverage any time until that date.

If you become entitled to elect COBRA continuation coverage, you must be given an election period of at least 60 days (starting on the later of the date you are furnished the election notice or the date you would lose coverage) to choose whether or not to elect continuation coverage.

In considering whether to elect continuation coverage, you should take into account that a failure to continue your group health coverage will affect your future rights under federal law. First, you can lose the right to avoid having pre-existing condition exclusions applied to you by other group health plans if you have more than a 63-day gap in health coverage, and election of continuation coverage may help you avoid such a gap. Second, you will lose the guaranteed right to purchase individual health insurance policies that do not impose such pre-existing condition exclusions if you do not get continuation coverage for the maximum time available to you. Finally, you should take into account that you have special enrollment rights under federal law. You have the right to request special enrollment in another group health plan for which you are otherwise eligible (such as a plan sponsored by your spouse's employer) within 30 days after your group health coverage ends because of the qualifying event listed above. You will also have the same special enrollment right at the end of continuation coverage if you get continuation coverage for the maximum time available to you.

## How much does continuation coverage cost?

Generally, each qualified beneficiary may be required to pay the entire cost of continuation coverage. The amount a qualified beneficiary may be required to pay may not exceed 102 percent of the cost to the group health plan (including both employer and employee contributions) for coverage of a similarly situated plan participant or beneficiary who is not receiving continuation coverage (or, in the case of an extension of

continuation coverage due to a disability, 150 percent). The required payment for continuation coverage for the qualified beneficiaries listed on page one of this notice is described on page one.

The Trade Act of 2002 created a new tax credit for certain individuals who become eligible for trade adjustment assistance (eligible individuals). Under the new tax provisions, eligible individuals can either take a tax credit or get advance payment of 65% of premiums paid for qualified health insurance, including continuation coverage. If you have questions about these new tax provisions, you may call the Health Care Tax Credit Customer Contact Center toll-free at 1-866-628-4282. TTD/TTY callers may call toll-free at 1-866-626-4282. More information about the Trade Act is also available at www.doleta.gov/tradeact/2002act_index.asp.

**When and how must payment for continuation coverage be made?**

*First payment for continuation coverage*

Your initial premium payment(s) must be postmarked no later than 45 days of the postmark date of your election. To avoid cancellation, your initial payment must include premiums due from the date of coverage loss through the end of the month prior to the month in which your payment is postmarked. If you do not make your first payment for continuation coverage within those 45 days, you will lose all continuation coverage rights under the Plan. **Please note even though you have 45 days to make your first payment your coverage will not be reinstated until payment has been made.**

You are responsible for making sure that the amount of your first payment is enough to cover this entire period. Your first payment for continuation coverage should be sent to UHCDirectBill, P.O. Box 14253, Orange, CA 92863-1253.

*Periodic payments for continuation coverage*

After you make your first payment for continuation coverage, you will be required to pay for continuation coverage for each subsequent month of coverage. Under the Plan, these periodic payments for continuation coverage are due on the first day of the month. If you make a periodic payment on or before its due date, your coverage under the Plan will continue for that coverage period without any break.

You should receive payment coupons within 2 weeks of the date we receive your election. **Premiums are due regardless of your receipt of payment coupons,** so please contact UHCDirectBill at 866-747-0048 if you do not receive them or go to their Web site at www.uhcdirectbill.com

*Grace periods for periodic payments*

Although periodic payments are due on the dates shown above, you will be given a grace period of 30 days to make each periodic payment. Your continuation coverage will be provided for each coverage period as long as payment for that coverage period is made before the end of the grace period for that payment. However, if you pay a periodic payment later than its due date but during its grace period, your coverage under the Plan will be suspended as of the due date and then retroactively reinstated (going back to the due date) when the periodic payment is made. This means that any claim you submit for benefits while your coverage is suspended may be denied and may have to be resubmitted once your coverage is reinstated.

If you fail to make a periodic payment before the end of the grace period for that payment, you will lose all rights to continuation coverage under the Plan.

3

**Can you elect other health coverage besides continuation coverage?**

Under the Plan, you have the right, when your group health coverage ends, to enroll in an individual health insurance policy, without providing proof of insurability. The benefits provided under such an individual conversion policy may not be identical to those provided under the Plan. You may exercise this right in lieu of electing continuation coverage, or you may exercise this right after you have received the maximum continuation coverage available to you. You should note that if you enroll in an individual conversion policy you lose your right under federal law to purchase individual health insurance that does not impose any pre-existing condition limitations when your conversion policy coverage ends.

**How does Medicare affect COBRA coverage?**

The entitlement to Medicare does not constitute a "second qualifying event" under COBRA (which extends the COBRA coverage period of an affected former employee's spouse and dependents from 18 to 36 months) unless entitlement to Medicare would, by itself, result in the employee's loss of health coverage. Under the Medicare Secondary Payer rules, an active employee's entitlement to Medicare (or the entitlement of such active employee's spouse) due to age cannot affect his right to health care coverage from the employer and, therefore, can never be an initial qualifying event. But if you are terminated during the 18 months following your entitlement to Medicare, then the termination of employment coupled with the initial entitlement would extend the COBRA coverage period for your spouse and dependents from 18 to 36 months.

**For more information**

This notice does not fully describe continuation coverage or other rights under the Plan. More information about continuation coverage and your rights under the Plan is available in your Summary Plan Description or from the Plan Administrator. You can get a copy of your Summary Plan Description from: Plan Administrator, Peter Kiewit Sons', Inc., 1000 Kiewit Plaza, Omaha, NE 68131, (402) 271-2808.

For more information about your rights under ERISA, including COBRA, the Health Insurance Portability and Accountability Act (HIPAA), and other laws affecting group health plans, contact the U.S. Department of Labor's Employee Benefits Security Administration (EBSA) in your area or visit the EBSA web site at www.dol.gov/ebsa.

**Keep Your Plan Informed of Address Changes**

In order to protect your family's rights, you should keep the Plan Administrator informed of any changes in the addresses of family members. You should also keep a copy, for your records, of any notices you send to the Plan Administrator.

## GROUP TERM LIFE INSURANCE CONVERSION

### BASIC LIFE (Company Provided)

The company provides eligible employees group term life insurance equal to two times your base annual salary up to maximum of $100,000. This coverage ends on the day you terminate employment. However, you may "convert" some or all of this coverage to an individual whole life policy (with individual rates) with Cigna Life regardless of your health. This option is important if you cannot buy life insurance on your own because of a health problem.

Contact the Home Office Benefits Department at (402) 271-2838 as soon as possible if you are interested in the conversion option and we will send you the necessary form. *To be eligible for this option you MUST have your completed form mailed to Cigna Life within 31 days after your last day worked. If you have questions please call Cigna at 1-800-759-0101 regarding the Conversion process.*

### SUPPLEMENTAL LIFE CONTINUATION

You may continue you and your dependent's coverage by requesting Portability and **paying the required premium within 31 days of the termination of your Supplemental Life Insurance.** If you were currently enrolled in the Supplemental Life and would be interested in continuing, please contact the Home Office Benefits Department at 402-271-2838 and we'll send you the necessary form. This coverage ends on the day you terminate employment. **You must do this ASAP due to the limited time you have to Port your policy.** If you would like an estimated premium before applying for coverage, please call 1-800-423-1282

**PLEASE NOTE:** This portability option is not available to individuals who have reached retirement age, as defined in the 1983 amendments to the Federal Social Security Act.

## GROUP LONG TERM DISABILITY CONVERSION

To obtain coverage under the Group Long Term Disability Conversion Policy, you must contact the Home Office Benefits at (402) 271-2870 and we'll send you the necessary form. *To be eligible for the conversion, you must have your completed conversion form and the required premium mailed to Hartford within 31 days of the termination date.*

1

From _____

Policy No. 702561

UHCDirectBill
P.O. Box 14253
Orange, CA 92863-1253

5/24
10 20701

RECEIVED 5/15
MAY 2 2 2007
LW

# PETER KIEWIT SONS', INC. WELFARE BENEFITS PLAN
## MEDICAL/DENTAL COBRA CONTINUATION COVERAGE ELECTION FORM
### Policy No. 702561

1. If you wish to continue you and/or your dependent's Medical and/or Dental coverage please complete this form.
2. Return this form and initial premium payment made payable to "UHCDirectBill", P.O.Box 14253 Orange, CA 92863-1253 (866)214-2982. An envelope has been enclosed for your convenience.

## Personal Information

Former Employee: __RICHARD A. NOBLE__     SSN: __380 58 1376__

Qualified Beneficiary (if different from Former Employee): _____     SSN: _____

Address: __4266 DUBLIE COURT     CONCORD     CA     94521__
          Street                  City         State      ZIP

Date of Birth __04/21/1952__     Sex: (Male)/Female     Relationship to Former Employee (Please circle): (Self)/Spouse/Child

Daytime Phone No. __925-827-0959__

*You may elect to keep the same coverage you currently had, or elect only medical or only dental coverage. You can drop dependents but you can not add dependents that were not previously covered. For example if you had family coverage, you may change to individual coverage.*

## Your Benefits (Indicate your benefit choices by checking the appropriate boxes.)

### Medical

Medical Plan  ☐ You   ☐ You/Spouse   ☐ You/Child(ren)   ☒ You/Family (for premium amount, see on other side)

### Dental

Dental Plan  ☐ You   ☐ You/Spouse   ☐ You/Child(ren)   ☒ You/Family (for premium amount, see on other side)

### Please indicate below the dependents that are to be covered under your benefit plan(s) (if applicable).

| Name (last, first) | Spouse/Child | Date of Birth | Student (Y/N) | Provide address if different | Medical | Dental |
|---|---|---|---|---|---|---|
| NOBLE, CHARLENE | SPOUSE | 1/11/66 | N | | ✓ | ✓ |
| GIZZARELLI, NICHOLAS | CHILD | 8/30/86 | | | ✓ | ✓ |
| GIZZARELLI, ANTHONY | CHILD | 12/10/90 | Y | | ✓ | ✓ |
| NOBLE, RICHARD A. II | CHILD | 1/31/89 | Y | 4240 Wesley Dr Midway NC 28107 | | |
| | | / / | | | | |

## Authorization

I have read and understand my rights to continue health coverage as explained in the "COBRA Continuation Coverage Rights." I hereby request the COBRA Continuation coverage(s). I understand that failure to make timely payment of required premiums will result in permanent loss of this coverage.

_____     _____
Your Signature                     5/14/07
                                   Date

# EXHIBIT D

8:29 p.m. Monday, October 8, 2007

Mr. Summers, good afternoon, this is Mark Zeller calling from California. I know that you are responsive to these voice mails, so I'm going to leave you another one, because it's in the interest of expediency. I received your fax today and I appreciate the letter that you sent. I have a couple of responses to it:

1. This group term life insurance conversion form you included was not included in the packet that Mr. Nobel received. I reviewed the entire packet that he received, and it was not included in that packet. So we definitely have a factual disagreement of whether this was included or not.

2. The issue of John Jansen and Mr. Nobel negotiating a return to work. I need to understand the nature of the paradigm that we are working with -- that your company is working with. You want to know what our view of the facts is. Essentially, the key element in our position is that Mr. Noble was terminated without benefit of the interactive accommodation process which is required under California law. The only interaction that Mr. Nobel had with your company was a request for information about when he could come back to work - he returned that request and then the next thing he received was a letter informing him he was separated from employment. He did not interpret this separation from employment letter as being a termination. It was not stated as being a termination. In fact, he never knew he was even terminated until Jane Sewell told him. The euphemism -- if it's that -- if that's what it is -- that he was separated from employment -- we choose not to believe it was termination. So if it was in fact termination, he was terminated without benefits of what's required here in California and that's an interactive process where the employer works with the employee

---

Mr. Summers, this is a continuation of my earlier message. This is Mark Zeller in California on the Noble case.

The lack of interactive process to determine appropriate accommodations means only that he was terminated because of his cancer, and that, and other secondary and ancillary claims related to disability, are the basis for the Fair Employment and Housing Act claim that we have made. Now what I want from Kiewit is, I want Richard Noble employed as a continuously employed person since January of 2006 when he began, so that there is no interruption in his employment so that he has worked for a full year and is qualified for all the benefits and has worked continuously for over a year with the company. All of his prior insurance coverage reinstated and Richard Noble doing what he can do at Kiewit. He can do almost all of the essential functions of the job. He can work as a compliance regulatory officer. He can attend meetings. He can work as a salary administrator. He can work on recruiting and retention and the mentoring program. The thing he can't do or will need help doing is visiting individual job sites and standing at recruiting fairs because of the physical limitations he has. Other than that, those are the things he can do. He can do almost entirely the job he was doing before with some minor adjustments, rest breaks, etc. I want him employed at the same wage and eligible for all the benefits of a continuously employed person. I've asked John to wait until I get that response from you to call John Jansen back, because if he is to be working again at Kiewit as an employee, an employee that has been continuously working there since January of '06 . . .

# EXHIBIT E



**GLENN SUMMERS**
Assistant General Counsel
(402) 271-2884    (402) 271-2830 Fax
glenn.summers@kiewit.com

October 15, 2007

BY FACSIMILE AND U.S. MAIL

Mr. Mark Edward Zeller
1990 North California Blvd., Suite 830
Walnut Creek, CA 94523

Re:    Richard Noble

Dear Mr. Zeller:

This letter is a follow-up to my letter of October 9, 2007. As stated therein, Mr. Jansen has evaluated the District's HR needs and determined that a position of HR Training Manager is available. Attached is a list of duties involved in that position. The position would be at the same salary as Mr. Noble's prior position. Mr. Jansen called Mr. Noble this morning to discuss the position, but Mr. Noble requested that any communications go through you.

Let me know how you would like to proceed. The Northern Cal District is interested in having Mr. Noble work again as a full-time employee, with or without reasonable accommodations. As I stated in my prior letter, if Mr. Noble is able to work for the District again, his hiring would be without prejudice to any alleged claims Mr. Noble may have concerning past conduct.

Sincerely,

Glenn Summers
Assistant General Counsel

Enclosure

c:   John Jansen
     Don Greenbaum

KIEWIT PACIFIC CO.
Kiewit Plaza, Omaha, NE 68131
(402) 342-2052

## NORTHERN CAL. DISTRICT
## HR TRAINING MANAGER

Establish process for training and development function

Oversee EEOC and other compliance training issues

Manage scheduling of corporate and district training classes

Maintain up-to-date training database in PeopleSoft

Assist with on-boarding new employees

Assist with updating employee training files

Work with Safety Department to document their training into District database

Assist with updating the annual review process

Assist with HR Compliance issues

Assist with database management for succession planning

Training managers on conducting annual interviews

Training managers on the positive discipline process

Training managers on mentoring techniques

Assist managers in developing training programs to fit their needs

Develop training programs as needed

Develop strategies on retention

Assist or lead special projects

\*    May require driving to job sites to conduct interviews and provide training. May need to be out of the office in field up to 50% of the time. May need to drive/fly to destination.

# EXHIBIT F

**LAW OFFICE OF MARK EDWARD ZELLER**
1990 NORTH CALIFORNIA BLVD., SUITE 830
WALNUT CREEK, CA 94596
TEL: 925-932-7032
FAX: 925-932-7033

OCT 2 3 2007

Kiewit Legal

October 16, 2007

Glenn Summers
Kiewit Plaza
Omaha, Nebraska 68131

**Re: Richard Noble:** *Wrongful Termination in Violation of Public Policy;*
*Discrimination and Wrongful Termination on the Basis of Disability and Medical*
*Condition; Failure to Accommodate; Failure to Participate in the Interactive Process*

Dear Mr. Summers,

I have reviewed your recent correspondence. I have concluded that this is a case for Wrongful Termination in Violation of Public Policy; Discrimination and Wrongful Termination on the Basis of Disability and Medical Condition; Failure to Accommodate; Failure to Participate in the Interactive Process.

The Department of Fair Employment and Housing will investigate this case. The complaint is in the process of final revision and completion now.

At this time Richard Noble will no longer communicate with Kiewit regarding any aspect of this case. We will follow the investigation of the Department of Fair Employment and Housing, and will file appropriate civil actions.

Please instruct all Kiewit employees to not contact Mr. Noble.

You may correspond with me.

Sincerely,

Mark Zeller

Mark Zeller

cc: Richard Noble

# EXHIBIT G



**GLENN SUMMERS**
Assistant General Counsel
(402) 271-2864     (402) 271-2830 Fax
glenn.summers@kiewit.com

October 26, 2007

BY FACSIMILE AND U.S. MAIL

Mr. Mark Edward Zeller
1990 North California Blvd., Suite 830
Walnut Creek, CA 94523

Re:     Richard Noble

Dear Mr. Zeller:

On October 22, I received in the regular mail your letter of October 16. I was surprised and disappointed at the letter, which provided no response to the Company's effort to re-employ Mr. Noble. As we have discussed in our correspondence, in January 2007, Mr. Noble stated in writing that January 11 was his last day of work and provided information that he was completely unable to work. As an accommodation, the Company effectively provided Mr. Noble with a leave of absence, with pay and full benefits. Unfortunately, after roughly four months of leave, Mr. Noble advised the Company that he was unable to return to work. For example, in Mr. Noble's letter of April 19, he stated he wished to return to employment "as soon as the medical professionals advise that I am able to do so." He further noted that "[p]resently my return to duty looks like late summer/early fall." The doctor's certification enclosed with the letter stated: "5. Present estimated date patient (even if still under treatment) will be able to perform his/her regular or customary work: 6 mos." Mr. Noble did not provide any evidence that he would be able to perform his job duties at that time, with or without accommodation. Unable to continue Mr. Noble's leave indefinitely, the Company had no reasonable accommodation option available. Mr. Noble's employment was therefore terminated. Under California law, an indefinite, open-ended leave of absence is not a reasonable accommodation. Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215, 226-227 (1999) ("Reasonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected").

Out of concern for Mr. Noble's situation, the Company provided him with just under $10,000 to cover his monthly COBRA payments through November, i.e., the time frame Mr. Noble and his doctor estimated he might be able to work again. The Company also made clear that it expected and intended to hire Mr. Noble again once he was able to work. As Mr. Jansen stated

Mr. Mark Edward Zeller
October 26, 2007
Page 2

in his May 1 letter, "As we have discussed, I am very interested in having you return to Kiewit and believe your talents can help us in our human resource journey. We have considered different options to help and continue to look forward to your return to good health and Kiewit."

In a voice mail message left after hours on Monday, October 8, 2007, you provided the Company with its first notice that Mr. Noble had recovered to a point that he was capable of working again, with accommodations. You asked that the Company correspond directly with you and advised that you had informed Mr. Noble not to contact the Company.

The next day, Tuesday, October 9, 2007, I advised that by the following Monday, October 15, 2007, the Company would be in a position to discuss with Mr. Noble the available positions and his restrictions in order to determine necessary accommodations to re-employ Mr. Noble (I advised that the several day delay was occasioned by the absence of a key player). I also made clear that Mr. Noble's reinstatement would be without prejudice to any claims he may assert regarding the Company's past conduct.

Surprisingly, I received no response from you. On October 15, 2007, Mr. Jansen contacted Mr. Noble and advised that the position of HR Training Manager is available at Mr. Noble's same salary level. At that time, Mr. Noble refused to discuss the position or his ability to perform the duties involved, indicating that all communications should go through you as his counsel/agent. Therefore, I contacted you and reiterated the Company's offer and advised that Mr. Jansen evaluated the District HR needs and determined that a position of HR Training Manager is available at Mr. Noble's same salary level. I enclosed the list of duties involved in the position and requested that you contact me to discuss Mr. Noble's re-employment with or without accommodations, without prejudice to any claims Mr. Noble may have concerning the Company's past conduct.

Unfortunately, on October 16, 2007 (after the Company made three attempts to engage in the interactive process) you advised that Mr. Noble would not engage in the interactive process and that you were resorting to litigation on his behalf. You again instructed the Company not to contact Mr. Noble.

The Company understands that Mr. Noble alleges legal claims concerning past conduct on behalf of the Company. However, that has no relationship to the interactive process. It is Mr. Noble's responsibility to provide the Company at the earliest opportunity with a concise list of restrictions which must be met to accommodate him and permit his re-employment. At this point, the Company is unaware of the specific limitations of Mr. Noble's disability, if any, that prevent him from being able to perform the essential functions of the HR Training Manager position offered to him.

The Company also reiterates that Mr. Noble retains a duty to cooperate with the Company's efforts to re-employ him and engage in the interactive process by explaining his disability and

Mr. Mark Edward Zeller
October 26, 2007
Page 3

qualifications regarding accommodation. Mr. Noble does not have a right to obstruct the process, regardless whether he desires to pursue his alleged claims regarding prior Company conduct. Mr. Noble must participate in the interactive process in good faith, undertake reasonable efforts to communicate his concerns, and make available to the Company information which is available, or more accessible by him. The Company views your correspondence of October 16, 2007, as a failure to participate in good faith in the interactive process and communicated refusal by Mr. Noble to mitigate any alleged damages he may claim in litigation against the Company.

Please contact me immediately so that we may keep the communications open. It is the Company's desire to work with you as the expressed agent for Mr. Noble to determine whether there is any reasonable accommodation that will enable Mr. Noble to be re-employed. We have previously asked that you or Mr. Noble provide us with information that will allow us to determine whether an accommodation is possible, but we have received no response. We have provided a specific position at the same pay rate as well as a description of the duties involved, but you have refused to provide any information other than the directive not to contact Mr. Noble. Therefore, we ask once again that you or Mr. Noble or his doctor provide information regarding Mr. Noble's restrictions and the accommodation(s) he needs in order to work again. If we do not receive this information, then we will assume that Mr. Noble remains totally unable to work in any capacity at this time, and that there is no accommodation available.

I look forward to hearing from you. If you have any questions, please contact me.

Sincerely,

Glenn Summers
Assistant General Counsel

c:    John Jansen
      Don Greenbaum

# EXHIBIT H

**LAW OFFICES OF MARK EDWARD ZELLER**
**1990 NORTH CALIFORNIA BLVD. SUITE 830**
**WALNUT CREEK, CA 94596**
**TEL: 925-932-7032**
**FAX: 925-932-7033**

OCT 2 9 2007

Kiewit Legal

October 26, 2007

Mr. Glenn Summers
Kiewit Plaza
Omaha, Nebraska 68131

Re: Richard Noble

Dear Mr. Summers,

I received your letter by fax, dated October 26, 2007. I respond in this way:

1. It is clearly a transparent effort to protect the company.
2. I dispute your interpretations of my voice messages. I deny that the representations you make of my comments are what I intended. You misconstrue the meaning to protect your company. Again, your representations of the meaning of my voice messages is false. I suggest that you do not continue to try to use words you claim I said to prove your points. This is a tedious exercise. I have written you nothing which supports the meaning you attach to my voice messages. Additionally you leave out all the critical parts of the voice messages.
3. This is a case of wrongful termination. After reviewing the file and hearing from you and your company it is clear to me that Mr. Noble was TERMINATED. You cannot enter into interactive processes AFTER THE FACT. It is an absurd logical leap that you attempt. I will not argue this with you in letters. It is something that will be borne out by the evidence and the pleadings in the case. It is ridiculous to state the anybody has a duty to discuss anything with the employer who wrongfully terminated him. Please do not insult my intelligence with such argument and feigned magnanimity.
4. Your company's position is that Mr. Noble was TERMINATED. There was no interactive process attempted BEFORE HE WAS TERMINATED.
   a. It is the height of absurdity to state that he must interact with the company in order to be REEMPLOYED.

b. In your references to reemployment do you mean "reinstatement"—the term you use in the second full paragraph of page 2? You see, that is the key distinction, which I am sure you must apprehend.

c. In the course of our discussions, it became clear that Mr. Noble WAS TERMINATED. It was not clear to me by any of the correspondence that Mr. Jansen sent. What does "administrative separation from employment" mean? Well, it is clear now that to you it means TERMINATION.

d. When Mr. Noble mentioned the possibility of returning to work, this was presuming that he would be returning to a position from which HE WAS NOT TERMINATED. Now, it is clear that from your company's perspective HE WAS TERMINATED. Please face that fact. Further, and more importantly, Mr. Noble in his recent communication was expressing his ability to work full time in a position from which he was never terminated. Please note: Mr. Noble has always been available, at different periods to work part-time, and to work with accommodations. In fact, Mr. Noble first presented the company with his need for accommodations in a letter from Dr. Michael Messer in December of 2006. Also, Mr. Noble communicated with your company officer Michael Geary regarding his need for accommodations; and Richard Noble attempted to interact with John Jansen, about his need for accommodations. Mr. Noble presented to these company officers options for work he was able to perform— reviewing resumes, conducting phone interviews, etc. Please note that Mr. Jansen NEVER RETURNED several phone calls left my Mr. Noble to discuss these.

e. What was at best unclear to me is now crystal clear. FROM YOUR COMPANY'S PERSPECTIVE, RICHARD NOBLE WAS TERMINATED—PERIOD. And, he was terminated for no other reason than his medical condition-HIS CANCER. He was TERMINATED with no respect—he was terminated without any discussion of his ability to work in any way, or accommodations that could and should have been made—he was terminated upon your company's receipt of a note from his doctor that he needed a few months to recuperate—PERIOD. It took awhile for me to understand that "administrative separation from employment" meant TERMINATION. Why did your company not state TERMINATION in the first place? Why did it take so long to see the word TERMINATION in his employment file? Why was Mr. Noble not presented with continuation coverage applications for his life insurance—your assertion that he was, notwithstanding. These issues will be addressed in deposition and interrogatories. Who sent the documents? When? At whose orders?

Please desist from your transparent efforts to claim magnanimity for your company. It doesn't work. The facts speak for themselves. You will soon receive a FEHA complaint, and Civil Litigation must follow. Your company may wish to settle, but it will first have to come around to reality.


Thank you,

Mark Zeller

Mark Zeller


Cc: Richard Noble

# EXHIBIT I

 **Kiewit**

**GLENN SUMMERS**
Assistant General Counsel
(402) 271-2864    (402) 271-2830 Fax
glenn.summers@kiewit.com

October 30, 2007

BY FACSIMILE AND U.S. MAIL

Mark Edward Zeller, Esq.
1990 North California Blvd., Suite 830
Walnut Creek, CA 94523

Re:     Richard Noble

Dear Mr. Zeller:

In our correspondence of October 26 we requested that you inform us whether Mr. Noble is able to return to work with or without accommodations. We assume from your October 26 reply that either Mr. Noble is not capable of returning to work with or without accommodations or has no desire to do so and is requesting that we no longer attempt to understand any restrictions he might have. We want to make sure we understand your position regarding his return to work. Therefore, please respond.

We understand that you believe Kiewit's past conduct is actionable. The issue of Mr. Noble's return to work is separate and apart from any disagreement we might have regarding the past.

Thank you in advance for your reply and courtesy and cooperation.

Sincerely,

Glenn Summers
Assistant General Counsel

c:      John Jansen
        Don Greenbaum

KIEWIT PACIFIC CO.
Kiewit Plaza, Omaha, NE 68131
(402) 342-2052

# EXHIBIT J

 **Kiewit**

**GLENN SUMMERS**
Assistant General Counsel
(402) 271-2864    (402) 271-2830 Fax
glenn.summers@kiewit.com

November 14, 2007

**VIA FACSIMILE
AND U.S. MAIL**

Mark Edward Zeller, Esq.
1990 North California Blvd., Suite 830
Walnut Creek, CA 94523

Re:    Richard Noble

Dear Mr. Zeller:

We have not received a response to either our correspondence of October 26 or our correspondence of October 30 wherein we requested that you inform us whether Mr. Noble is able to return to work with or without accommodations. Since then, the present HR Manager at the District resigned.

Therefore, Kiewit is offering Mr. Noble an unconditional return to work in his <u>former position</u> as HR Manager (as you will recall, we previously offered Mr. Noble the HR Training Manager position at the same pay rate, which he declined). Upon receipt of a release from his medical care provider, Mr. Noble will be reinstated to his same position at the same pay rate. His reemployment will be without prejudice to any claims he asserts against the Company related to past conduct.

If Mr. Noble believes he is ready to return to work but has limitations affecting his ability to perform his job duties, we would like authorization so that we can work with his medical care provider to determine what, if any, accommodations he might need so that he can return to work in his former position as HR Manager.

Because Kiewit must begin evaluating other candidates if Mr. Noble declines this offer, please respond within ten calendar days of the date of this letter. Thank you in advance for your prompt reply and courtesy and cooperation.

Sincerely,

*Glenn Summers* ld

Glenn Summers
Assistant General Counsel

c:    John Jansen

KIEWIT PACIFIC CO.
Kiewit Plaza, Omaha, NE 68131
(402) 342-2052

# EXHIBIT K



OU-23-2007 01:55P FROM:ZELLER LAW OFFICES    925-932-7033          TO:914022712830          P.1



# LAW OFFICE OF MARK EDWARD ZELLER
### 1990 NORTH CALIFORNIA BLVD., SUITE 830
### WALNUT CREEK, CA 94596
### TEL: 925-932-7032
### FAX: 925-932-7033

November 23, 2007

Glenn Summers
Kiewit Plaza
Omaha, Nebraska 68131
**VIA FACSIMILE**
**AND US MAIL**
**FAX: KIEWIT LEGAL—402-271-2830**

**Re: Richard Noble:** *Wrongful Termination in Violation of Public Policy;*
*Discrimination and Wrongful Termination on the Basis of Disability and Medical*
*Condition; Failure to Accommodate; Failure to Participate in the Interactive Process*

Dear Mr. Summers,

    I have received your correspondence dated November 14, 2007. Please note that
this correspondence did not reach me by US MAIL until well after that date.
    I will respond to this correspondence by stating:

    1. It is impossible to understand your offer because the term "reinstatement" is
unclear. In your earlier correspondence you do not use this term, and you have indicated
that your understanding of your company's position is that Mr. Noble may be
"reemployed." In order for Mr. Noble to fully evaluate this offer, you must explain the
meaning of "reinstatement." Does this mean that he will will regarded as an employee
who has been continuously employed, and the employee records will indicate that he was
never terminated? Does this mean that he will be compensated all wages lost to date due
to his wrongful termination?  Please clarify your understanding of the term
"reinstatement." Until you define your terms, your offer is ambiguous and Mr. Noble
cannot evaluate it.
    2. Mr. Noble needs additional time to coordinate the authorizations you require,
and to organize his medical information per your letter's stated requirements. This simply
cannot be done in the time frame demanded. Please allow an additional span of time for
Mr. Noble to correctly organize the authorizations and medical communications you
deem necessary.
    Please address the above issues, and apprise me of the company's position.

    Thank you,

    *Mark Zeller*

    Mark Zeller

Cc: Richard Noble

# EXHIBIT L

AN-7-2008  04:30P FROM:ZELLER LAW OFFICES    925-932-7033    TO:14022712830    P.1/1

**LAW OFFICES OF MARK EDWARD ZELLER**
**2255 CONTRA COSTA BLVD., SUITE 304**
**PLEASANT HILL, CA 94523**
**TEL: 925-363-5848**
**FAX: 925-363-7454**

January 7, 2007

Mr. Glenn Summers
Kiewit Plaza
Omaha, Nebraska  68131
By fax and US MAIL
FAX NO: 1-402-271-2830

Re: Richard Noble

Dear Mr. Summers,

Please note that I have a new office address and new phone and fax numbers. Please see the above letterhead for my current contact information.

Richard Noble responds to your latest letter by stating that while the offer looks interesting, he knows that there have been some changes since he left, and that the staffing structure may be different. For example, certain key support persons are no longer there. Thus, Mr. Noble is truly unaware that the job from which he was wrongfully terminated is the same job as you are offering.

Richard Noble is willing to entertain your offer, but he simply needs more information. He presumes that staff is either non-existent or not trained. Mr. Noble, to begin to fairly assess your recent offer of reinstatement, needs understanding of staffing and support structure, as well as a full and detailed job description for the position.

Mr. Noble has always been willing to work. Before he was terminated he assured the company on several occasions that he could and would perform whatever tasks he could full or part time. In order for Mr. Noble to understand the present offer, please give him information requested in our earlier correspondence. Until then, he has no way to understand what you are offering. He is clear that the position, because of staffing and structural changes, may not be the one you are now offering.

In your most recent letter you requested that we respond as soon as possible. We are complying with that request now, which is the earliest possible date, given all contingencies. We likewise request that you respond as soon as possible.

Sincerely,

Mark Zeller

Mark Zeller

Letter to Glenn Summers, Kiewit
January 7, 2007

# EXHIBIT M



**GLENN SUMMERS**
Assistant General Counsel
(402) 271-2864    (402) 271-2830 Fax
glenn.summers@kiewit.com

January 15, 2008

**VIA FACSIMILE**
**AND U.S. MAIL**

Mark Edward Zeller, Esq.
2255 Contra Costa Blvd.
Suite 304
Pleasant Hill, CA  94523

Re:     Richard Noble

Dear Mr. Zeller:

I am in receipt of your letter of January 7, 2008.  In my correspondence of November 14 and December 5, 2007, I noted that the District was required to begin pursuing alternatives in the absence of a response from Mr. Noble as to whether he was willing and able to accept the HR Manager position.  In particular, my letter of November 14 requested a medical release and noted: "Because Kiewit must begin evaluating other candidates if Mr. Noble declines this offer, please respond with ten calendar days of this letter."  My letter of December 5 reiterated that Kiewit would begin pursuing alternatives.  In the ensuing month-plus since that correspondence, we did not receive a medical release or any other indication that Mr. Noble was willing and able to take the position.  Meanwhile, consistent with my correspondence, the District has made its decision on filling the position.  Therefore, the position is no longer available.

Sincerely,

Glenn Summers
Assistant General Counsel

c:     John Jansen

KIEWIT PACIFIC CO.
Kiewit Plaza, Omaha, NE 68131
(402) 342-2052

# EXHIBIT N

Glenn Summers

From: Ron C. Finley [mailto:rfinley@beckross.com]
Sent: Thursday, January 31, 2008 5:40 PM
To: Glenn.Summers
Cc: Alfredo A. Bismonte; Craig A. Hansen; Diane Rosenbaum
Subject:

Dear Mr. Summers,

Our law firm represents Richard Noble and Charlene Noble in a federal lawsuit
recently filed in the Northern District of California against Kiewit Pacific
Co., Peter Kiewit Sons', Inc., Peter Kiewit Sons', Inc. Health and Welfare
Plan; John Jansen, Michael Phelps, Jane Sewell, and Life Insurance Company of
North America.  That lawsuit includes federal claims for denial of employee
benefits under ERISA and state-based claims for wrongful termination under
FEHA and common law.  A copy of the Noble's complaint is attached for your
reference.

As you are probably aware, Mr. Noble is dying from cancer.  His condition is
growing progressively worse and his doctors have advised him that he may have
less than one month to live.  I hope and trust that you would agree that under
these dire circumstances, all parties to this matter share the collective
interest of securing Mr. Noble's testimony as soon as possible.

In order to reach that common goal, we ask that you agree to accept service on
behalf of all Kiewit-related defendants (i.e., all defendants other than Life
Insurance Company of North America.)  If you are agreeable, please let us know
as soon as possible.  If so, we will forward all service papers to your
attention.  Moreover, we request that you stipulate to the taking of Mr.
Noble's deposition on an expedited basis prior to the Rule 26(f) conference.
We will also direct similar requests to the Life Insurance Company of North
America.

Thank you for your anticipated cooperation in this matter.  Please call me by
the end of business February 1, 2008.  Otherwise we will serve the Complaint,
Summons and related documents and formally petition the Court for an expedited
deposition of Richard Noble to occur as early as next week.

Sincerely,

Ron C. Finley
Beck, Ross, Bismonte & Finley, LLP
Fairmont Plaza
50 West San Fernando Street, Suite 1300
San Jose, Ca  95113

Tel: 408.938.7900 Fax: 408.938.0790 Email: rfinley@beckross.com

CONFIDENTIALITY NOTICE:  This e-mail transmission, and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED.  If you have received this transmission in error, please immediately notify the sender.  Please destroy the original transmission and its attachments without reading or saving in any manner.

Thank you, Beck, Ross, Bismonte & Finley, LLP

Any tax information or written tax advice contained herein (including any attachments) is not intended to be and cannot be used by any taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer. (The foregoing legend has been affixed pursuant to U.S. Treasury Regulations governing tax practice.)

This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). If you are not the intended recipient, any disclosure, copying, distribution, or use of the contents of this information is prohibited and may be unlawful. If you have received this electronic transmission in error, please reply immediately to the sender that you have received the message in error, and delete it. Thank you.